

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-14-1997

# Parks v. Alliedsignal Inc

Precedential or Non-Precedential:

Docket 96-3256

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Parks v. Alliedsignal Inc" (1997). *1997 Decisions*. Paper 104.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/104

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 14, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-3256

EDITH J. PARKS, Individually, Personal Representative of
the Estate of Leslie E. Parks, Deceased and as parent and
next friend of Kori J. Parks

v.

ALLIEDSIGNAL, INC.; THE WARNER & SWASEY
COMPANY; THE GRADALL COMPANY

EDITH J. PARKS, Individually, As Personal Representative
of the Estate of Leslie E. Parks, Deceased, and as parent
and next friend of Kori J. Parks,

Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 92-cv-02105)

Argued: February 11, 1997

BEFORE: GREENBERG, COWEN and McKEE,
Circuit Judges

(Filed May 14, 1997)

L. Palmer Foret, Esq. (argued)
Foret and Thompson
1275 K Street, N.W.
Suite 1101
Washington, D.C. 20005

Counsel for Appellant
Edith J. Parks

Michael D. Heintzman, Esq. (argued)
Kenneth F. Klanica
Heintzman, Warren & Weis
707 Grant Tower
Gulf Tower, 35th Floor
Pittsburgh, PA 15219

Counsel for Appellees
AlliedSignal, Inc.
The Gradall Company

**OPINION OF THE COURT**

COWEN, <u>Circuit Judge</u>.

Edith J. Parks (Mrs. Parks) appeals from the April 1, 1996, order of the United States District Court for the Western District of Pennsylvania denying her a new trial in a strict products liability tort action. She asserts that the district court erred in instructing the jury as to causation and contributory negligence, and in failing to take sufficient steps to ensure that defendants complied with discovery orders. We agree and will reverse and remand for a new trial.

I.

Mrs. Parks alleges that defective visibility features on AlliedSignal's Gradall G-600 excavating machine caused her husband's death. Leslie Parks (Mr. Parks) was a general laborer for Allegheny Sand, Inc. Mrs. Parks is his widow. Mr. Parks was killed while working with the Gradall machine, an excavator with two separate cabs that is used

for breaking boulders into smaller pieces. One cab is in the front, as in an ordinary truck, and is occupied by the driver of the vehicle. The second cab, at the rear, is attached to and controls the excavating arm.

The second cab, the arm, and the arm's counterweight are all in one line. The counterweight keeps the machine from tipping when the arm is used off-center. When the second cab operator moves the arm as if tracing a circle, the machine's entire arm (including the counterweight) swings around a central point. The operator sits in the middle, swinging along with the arm. The operator's seat faces the excavating arm, and the counterweight swings out behind his back. The cab has no mirrors, so the operator has no view to the area behind him and only limited side visibility while operating the controls.

On the morning of the accident, Mr. Parks and two co-workers, at the direction of their supervisor, endeavored to break some blocks of carbon. The machine's regular shovel had been replaced by Mr. Parks' employer with a chipper attachment used for carbon-breaking. From outside the machine, Mr. Parks directed his co-workers, who occupied the two cabs and controlled the truck. Alan McMunn, sitting in the front cab, drove the machine to the back of a shed where the carbon was stored. William Kline, in the second cab, operated the excavator arm and boom.

Mr. Parks walked to the back of the shed. As McMunn pulled the machine into the shed, Mr. Parks directed him. Mr. Parks told Kline to swing the boom to the left. The instruction sent the excavating arm's counterweight on a collision course with Mr. Parks. Mr. Parks was pressed between the counterweight and the wall, causing his death.

Mrs. Parks sought to hold AlliedSignal liable on the theory that it failed to install a rear-view mirror or alternative safety device on the Gradall machine. She alleged that this omission made the product "unreasonably dangerous" because it caused the vision of the second cab's operator to be needlessly circumscribed. Over objections by Mrs. Parks, the district court admitted evidence concerning Mr. Parks' conduct immediately prior to his death. The district court refused to charge the jury that Mr. Parks'

3

conduct could be viewed as a legal cause of his death only if it were unforeseeable.

The jury found that the product was indeed defective, but nevertheless returned a verdict for the manufacturer. The verdict was presumably based on the finding of the jury that the defect was not "a substantial factor" in causing the death. Parks' motion for a new trial was denied. Mrs. Parks argues that the district court erred when it failed to charge the jury that if Mr. Parks' conduct were foreseeable, such conduct could not have broken any chain of causation linking the alleged defect to his death.

In addition, during the trial Mrs. Parks sought to compel disclosure of information that she had requested during pre-trial discovery, but which allegedly had not been divulged. That information concerned other accidents involving similar machines and the placement of mirrors on those machines. The district court granted the motion to compel,[1] but the record on appeal raises serious questions as to whether defendants properly complied with discovery orders.

II.

The district court exercised jurisdiction pursuant to 28 U.S.C. § 1332 (1993), diversity of citizenship. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 (1993). Concerning the propriety of the charge delivered to the jury, our standard of review is plenary, as we are reviewing whether the district court erred in formulating a legal precept. See Hook v. Ernst & Young, 28 F.3d 366, 370 (3d Cir. 1994)(citing Griffiths v. CIGNA Corp., 988 F.2d 457, 462 (3d Cir. 1993)(citing Rotondo v. Keene Corp, 956 F.2d 436, 438 (3d Cir. 1992))). We review the supervision of discovery by the district court for abuse of discretion. See United States v. 27.93 Acres of Land, 924 F.2d 506, 510 (3d Cir. 1991); Marroquin-Manriquez v. INS, 699 F.2d 129, 134 (3d Cir. 1983).

---

1. App. at 528-531.

4

III.

We initially review two key questions raised on this appeal. First, what must a plaintiff show in order to recover in a strict products liability tort action under Pennsylvania law, which incorporates section 402A of the Restatement (Second) of Torts? Second, having admitted evidence of a decedent's conduct immediately before an accident, what must a district court do to fulfill its obligation to explain to a jury the appropriate use of such information?

A. Section 402A

Section 402A, which was adopted by the Supreme Court of Pennsylvania in Webb v. Zern, 220 A.2d 853, 854 (Pa. 1966), "imposes strict liability for injuries caused by defective product design."2 Pacheco v. Coats Co., Inc., 26 F.3d 418, 421 (3d Cir. 1994)(citing Lewis v. Coffing Hoist Div., Duff-Norton Co., 528 A.2d 590, 592 (Pa. 1987)). See also Phillips v. A-Best Products Co., 665 A.2d 1167, 1170 (Pa. 1995)(acknowledging Pennsylvania's adoption of section 402A). In the words of the Pennsylvania Supreme Court, "Section 402A . . . requires only proof that a product was sold in a defective condition unreasonably dangerous

_____

2. Section 402A provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

 (a) the seller is engaged in the business of selling such a product, and

 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

 (a) the seller has exercised all possible care in the preparation and sale of his product, and

 (b) the user or consumer has not bought the product from or entered into contractual relations with the seller.

RESTATEMENT (SECOND) OF TORTS § 402A (1965).

5

to the user or consumer, and that the defect was the proximate cause of plaintiff's injuries." Walton v. Avco Corp., 610 A.2d 454, 458 (Pa. 1992). "Manufacturers are held as guarantors upon a finding of defect and causation." Id. at 462.

In order to prevail in a section 402A action, the plaintiff must show that a product is "unreasonably dangerous to intended users for its intended use." Pacheco, 26 F.3d at 422 (emphasis omitted). In interpreting the phrase "intended use", we have held that "the intended use of a product `includes all those [uses] which are reasonably foreseeable to the seller.' " Id. (quoting Sheldon v. West Bend Equip. Corp., 718 F.2d 603, 608 (3d Cir. 1983)(alteration added)). Under the strict liability test, therefore, a defendant is liable for causing injury to a person who was behaving in a foreseeable manner. This principle is reflected in the jury instruction recommended by Pennsylvania's Committee for Proposed Standard Jury Instructions, which the Pennsylvania Supreme Court endorsed in Azzarello v. Black Bros. Co., Inc.:

The product must . . . be provided with every element necessary to make it safe for [its intended] use, and without any condition that makes it unsafe for [its intended] use. If you find that the product, at the time it left the defendant's control, lacked any element necessary to make it safe for [its intended] use or contained any condition that made it unsafe for[its intended] use, then the product was defective, and the defendant is liable for all harm caused by such defect.

391 A.2d 1020, 1027 n.12 (Pa. 1978). See also Lewis v. Coffing Hoist Div., Duff-Norton Co., 528 A.2d 590, 593 (Pa. 1987).

1. Foreseeability

Section 402A liability cannot be found if, at the time of the accident, the product was being used in an unforeseeable manner. The requirement of foreseeability therefore enables strict liability to exist without transforming manufacturers into absolute insurers of their products. The importance of this rule has been repeatedly

6

demonstrated in the courts. In Sheldon, 718 F.2d at 608, we held that "the district court[ ][should not] fail[ ] to instruct the jury to the effect that the intended use of a product includes any use which is reasonably foreseeable to the seller." See also Schell v. AMF, Inc., 567 F.2d 1259, 1263 (3d Cir. 1977)(quoting Kuisis v. Baldwin-Lima-Hamilton Corp., 319 A.2d 914, 921 n.13 (Pa. 1974))("whether a particular use of a product is abnormal depends on whether the use was reasonably foreseeable by the seller."). In Eck v. Powermatic Houdaille, 527 A.2d 1012, 1019 (Pa. Super. 1987), the Superior Court of Pennsylvania reversed a trial court on the grounds that "the established rule of law . . . requires consideration of `foreseeability' " in the jury instruction in a strict products liability action.

The concept of foreseeability is relevant to strict products liability cases for the purpose of determining whether the use that was made of a product at the time of the accident was one that the manufacturer could have reasonably anticipated. See Schell, 567 F.2d at 1263. In order to prevail in a section 402A products liability action, then, the plaintiff must show that: (1) a product defect (2) caused a harm (3) while the product was being used in a foreseeable manner.

As the Pennsylvania Superior Court held in Sweitzer v. Dempster Sys., 539 A.2d 880, 882 (Pa. Super. 1988)(citing Salvador v. Atlantic Steel Boiler Co., 319 A.2d 903, 907 (Pa. 1974)(emphasis added)):

The role of foreseeability in a product liability case is consistent with the broad and sound social policy underlying § 402; that is, as between an innocent user of a product and a manufacturer or seller who is engaged in the business of manufacturing or selling a product, risk of loss for injuries resulting from the use of a defective product shall be borne by the manufacturer and/or seller.

Of course, a defect may produce manufacturer liability in a given case only when the harm caused is of the type threatened by the defect.

7

2. "Substantial Factor" Causation as it Relates to Foreseeability

In determining how the elements of foreseeability and causation may properly be demonstrated in the instant case, we are again guided by Pennsylvania law. When addressing causation, Pennsylvania has rejected the "but for" test and adopted the "substantial factor" test as embodied in the Restatement (Second) of Torts § 431, which provides:

The actor's negligent conduct is a legal cause of harm to another if: (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence resulted in the harm.

See Trude v. Martin, 660 A.2d 626, 632 (Pa. Super. 1995)(citing Whitner v. Von Hintz, 263 A.2d 889 (Pa. 1970)).

The courts of other states following the Restatement have defined a "substantial factor" as one that is not "merely negligible." ACandS v. Asner, 686 A.2d 250, 260 (Md. 1996). "Stated differently, `[l]iability attaches not only to the dominating cause but also to any cause which constitutes at any event a substantial factor in bringing about the injury.' " Dawson v. Bunker Hill Plaza Assocs., 673 A.2d 847, 853 (N.J. Super. App. Div. 1996)(quoting Peer v. City of Newark, 176 A.2d 249 (N.J. Super. App. Div. 1961)(emphasis added)). The substantial factor test has replaced the "but for" causation test in strict liability contexts precisely because in design defect cases it is typically a matter of speculation whether the presence of a safety device would, in a given instance, have actually prevented a harm. See Yukon Equip., Inc. v. Gordon, 660 P.2d 428, 433 (Alaska 1983)(stating that "but for" causation jury instruction was improper in manufacturer's design defect case), overruled on other grounds, Williford v. L.J. Carr Invs., Inc., 783 P.2d 235 (Alaska 1989).

Our review of Pennsylvania law dictates that a plaintiff's conduct may be introduced to undermine a plaintiff's claim that the defect caused his accident only insofar as the plaintiff's conduct was unforeseeable to the defendant, even where the plaintiff played some part in setting the

8

accident in motion. Evidence concerning a decedent's possible role in bringing about his or her own death is admissible only to support defendant's claim that the conduct was so "extraordinary" or "[un]foreseeable" that it would be unjust to hold the defendant liable for the harm. See. e.g., Holloway v. J.B. Sys., Ltd., 609 F.2d 1069, 1074 (3d Cir. 1979). When courts admit such testimony, they must elucidate the limited permissible uses of that evidence, as it is highly susceptible to misinterpretation by the jury.

In determining causation, therefore, the task of the jury is not simply to determine whether the plaintiff played a part in causing the accident. Rather, the threshold question is whether the plaintiff's actions were foreseeable. As noted above, the manufacturer is responsible for making the product safe for all foreseeable uses. Decorative Precast Stone Erectors, Inc. v. Bucyrus-Erie Co., 493 F. Supp. 555, 557 (W.D. Pa. 1980), aff'd, 642 F.2d 441 (3d Cir. 1981), informs us that under Pennsylvania products liability law, if both a manufacturer's defect and a plaintiff's conduct are found to be proximate causes, the plaintiff will recover unless the defendant meets the burden of proving that plaintiff's conduct was so unforeseeable as to constitute a superseding cause. See infra, Sec. III.A.3. If foreseeable, the jury must find for the plaintiff unless it finds that the defect did not play even a substantial, or more than negligible, role in causing the plaintiff's injury. In Schell, 567 F.2d at 1263 (citing Barkewitch v. Billinger, 247 A.2d 603, 605)(Pa. 1968)), we explained that recovery is allowed where the absence of a safety device caused an injury of the type that could be expected from the foreseeable use of the product.3

─────────────────────────────────────────

3. The dissent writes that

The result the majority reaches does not take into account the distinction in Pennsylvania law between treatment of a plaintiff's negligence which is the sole cause of the injury and a plaintiff's negligence which combines with the defect in the product to cause the injury. Negligence of the second kind could defeat the claim only if it is . . . unforeseeable.

Dissent at 29. The instant case is precisely of the second type: the jury explicitly answered yes to the question, "Was the Gradall excavator

9

The element of causation, while required, is not the primary focus of section 402A cases. Causation may be shown by process of elimination or circumstantial evidence. In cases dealing with product malfunction, for instance, Pennsylvania appellate courts have consistently reversed trial courts for not sending to the jury cases in which causation had not been directly demonstrated. See, e.g., Ducko v. Chrysler Motors Corp., 639 A.2d 1204 (Pa. Super. 1994); Agostino v. Rockwell Mfg. Corp., 345 A.2d 735 (Pa. Super. 1975); Burchill v. Kearney-Nat'l Corp. v. Pennsylvania, 468 F.2d 384 (3d Cir. 1972). Similarly, in MacDougall v. Ford Motor Co., 257 A.2d 676, 680 (Pa. Super. 1969) overruled on other grounds, REM Coal Co. v. Clark Equip. Co., 563 A.2d 128, 134 (Pa. Super. 1989),4 the Pennsylvania Superior Court stated:

The evidentiary requirements of negligence law demand proof that injury is proximately caused by a specific defect in design or construction because liability hinges upon whether the accident could have been avoided by the exercise of reasonable care. In contrast, the

_____

defective at the time it was manufactured and sold?" App. at 432. The machine's defect was impaired visibility of precisely the area in which the accident occurred. In accordance with the dissent's above description, the manufacturer of the defective product in this case should be held liable unless the plaintiff's actions were unforeseeable. See also the criticism of Foley articulated in Dillinger, discussed infra in this opinion at 14-16. The dissent points out that the jury responded "no" to the question, "Was the defect in the excavator a substantial factor in bringing about Mr. Parks' death?" Dissent at 32. But our holding today is that the jury instructions did not properly illuminate, inter alia, what constitutes a substantial factor in a strict products liability action, so this question was not adequately explained to the jury. Having found that the Gradall machine was defective, the jury could have found that the defect was not a substantial factor in causing plaintiff's injury only if it found that had the mirror been in place, the driver would not have glanced into it before backing. Only in this sense does causation remain a factor susceptible to dispute. As this is a strict products liability action, the plaintiff's foreseeable actions remain immaterial to the question of causation.

4. We note that the dissent does not address these cases.

10

concern of both section 402A and warranty law is with the fitness of the product.

The de-emphasis of causation is a natural corollary of the distinction between negligence and strict products liability. In strict products liability, the focus is on whether the product was sold in an unreasonably dangerous condition for reasonably foreseeable uses. See Carpenter v. Koehring Co., 391 F. Supp. 206, 210-211 (E.D. Pa. 1975), aff'd, 527 F.2d 644 (3d Cir. 1976). In negligence, by contrast, the focus is on whether a duty of care was breached. See Kuisis, 319 A.2d at 920. In either negligence or strict products liability, proximate cause defines "such limits on recovery as are economically and socially desirable." Klages v. General Ordnance Equip. Corp., 367 A.2d 304, 313 (240 Pa. Super. 1976). In the products liability area, Pennsylvania has determined that it is economically and socially desirable to hold manufacturers liable for accidents caused by their defective products, without introducing negligence concepts of comparative fault that would weigh the manufacturer's negligent conduct against that of the injured product user. See Walton, 610 A.2d at 462. See also infra, Sec. III.A.4.

3. Superseding or Intervening Cause

The test for what constitutes a superseding cause reflects the de-emphasis of causation in strict products liability litigation. Klages explains that a reasonably foreseeable intervening act cannot "satisfy the requirements of a superseding cause."5 367 A.2d at 313. In a section 402A strict liability tort claim such as that in the instant case, "a

_____

5. The RESTATEMENT (SECOND) OF TORTS § 440 defines superseding cause as "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which by its antecedent negligence is a substantial factor in bringing about." Superseding cause (and the related intervening cause, defined in section 441) is a comparative negligence concept, whereby an actor's liability is diminished due to the injured party's own negligence. In order to be compatible with strict products liability, the concept must be substantially narrowed to eliminate any foreseeable conduct of the injured party.

11

negligent intervening act, to relieve defendant of accountability, must be . . . `so extraordinary as not to have been reasonably foreseeable.' " Eshbach v. W.T. Grant's and Co., 481 F.2d 940, 945 (3d Cir. 1973)(quoting Dorsey v. Yoder Co., 331 F. Supp. 753, 764 (E.D. Pa. 1971)(quoting Wilson v. American Chain and Cable Co., 364 F.3d 558, 562 (3d Cir. 1966))). Similarly, in Baker v. Outboard Marine Corp., 595 F.2d 176, 182 (3d. Cir. 1979), we held that the intervening negligence of a third party could serve as a superseding cause of injuries to shield defendant manufacturer from liability to plaintiff only if it were "so extraordinary as not to have been reasonably foreseeable." Id. at 182 (quoting Eshbach, 481 F.2d at 945). See also Williford, 783 P.2d at 237 (act may constitute superseding cause only if, in addition to being unforeseeable by defendant, it was highly extraordinary).

In short, even if an intervening but foreseeable action is responsible for the major share of a strict products liability injury, that action cannot ordinarily be held to be the legal cause of the injury. Instead, it is removed from the picture, and liability attaches to the remaining causal actor or actors. Here, if the possibility of a person standing in the path of the Gradall is found to be foreseeable or ordinary, Mr. Parks' actions cannot legally be viewed as disrupting or otherwise playing a part in the causal chain that culminated in his death.

4. Rejection of Comparative Fault

The above-described approaches to foreseeability, causation, and superseding cause in Pennsylvania strict products liability cases are compelled by Pennsylvania's rejection of comparative fault. Of particular relevance to the instant case, Walton explained that

[The Pennsylvania Supreme] Court has continually fortified the theoretical dam between the notions of negligence and strict "no fault" liability. It would serve only to muddy the waters to introduce comparative fault into an action based solely on strict liability.

610 A.2d at 462 (citations omitted)(emphasis added). It has been noted by numerous courts that "[t]he Pennsylvania

12

Supreme Court, perhaps more than any other state appellate court in the nation, has been emphatic in divorcing negligence concepts from product-liability doctrine." Kern v. Nissan Indus. Equip. Co., 801 F. Supp. 1438, 1440 (M.D. Pa. 1992)(quoting Conti v. Ford Motor Co., 578 F. Supp. 1429, 1434 (E.D. Pa. 1983), rev'd on other grounds, 743 F.2d 195 (3d Cir. 1984)).

The Pennsylvania Supreme Court recently explained its reasons for not extending the defense of comparative negligence to a strict products liability action:

Our position is not based solely on the problem of the conceptual confusion that would ensue should negligence and strict liability concepts be commingled, although that concern is not negligible. Rather, we think that the underlying purpose of strict product liability is undermined by introducing negligence concepts into it. Strict product liability is premised on the concept of . . . liability for casting a defective product into the stream of commerce.

 The deterrent effect of imposing strict product liability standards would be weakened were we to allow actions based upon it to be defeated, or recoveries reduced by negligence concepts.

Kimco Dev. v. Michael D's Carpet Outlets, 637 A.2d 603, 606-607 (Pa. 1993)(emphasis added).

Similarly, in McCown v. Int'l Harvester Co., 342 A.2d 381 (Pa. 1975), the plaintiff, as here, was injured by an industrial vehicle. According to the plaintiff, the machine's design was defective and caused his injuries. The defendant argued that plaintiff's contributory negligence should have been considered either to reduce the plaintiff's permissible recovery or as a defense to liability. The Pennsylvania Supreme Court disagreed, explaining that it would be unwise to "create a system of comparative assessment of damages for 402A actions." Id. at 382.

Pennsylvania's wish to avoid "muddy[ing] the waters" dictates that in discussing causation, the comparative fault of the parties involved is immaterial. Rather, the focus is again on whether the activity engaged in by the plaintiff

13

was foreseeable. If foreseeable, and the defect is found to have been a cause of the injury, the plaintiff's actions cannot preclude defendant liability. Any other approach would require weighing negligence or lack of care, which would inject comparative fault into strict products liability.

In Dillinger v. Caterpillar, Inc., 959 F.2d 430 (3d Cir. 1992), which undertook an extensive survey of Pennsylvania products liability law, the trial court's final charge expressly permitted the jury to consider plaintiff's alleged negligence when determining whether defendant's product caused his injuries: "The defendant denies that it is liable for plaintiff's injuries. Defendant contends that the 773 truck was not defectively designed, and that any injuries sustained by plaintiff were caused by the acts of plaintiff himself." 959 F.2d at 440. In Dillinger, we reversed, disapproving this jury charge because we found that it "effectively framed the issue as one of contributory negligence . . . ." Id. at 440 n.18. The defendant "point[ed] to a line of cases which suggest[ ] that, although evidence of a plaintiff's contributory negligence is ordinarily inadmissible, it is admissible to rebut the `causation' prong of a products liability claim." Id. at 441.

We rejected the defendant's arguments and found the line of cases cited to be "in some instances[irreconcilable] with the Pennsylvania Supreme Court's declarations on this subject." Id. at 441. We also distinguished that line of cases from the case then before us, by explaining that in the cases cited by the defendant, "the plaintiff's conduct [had] actively contributed to the cause of the accident, [rather than] merely [failing] to prevent the accident attributable to the defect." Id. at 442. We reasoned in Dillinger that the evidence of the plaintiff's conduct was especially inadmissible when the conduct was "merely insufficient to prevent the accident attributable to the defect." Id. In Dillinger, therefore, we left open the question of whether a different result would obtain where the plaintiff's conduct had been more than "merely insufficient to prevent the accident attributable to the defect." Id.

The argument of the defense in the instant case--that a plaintiff's foreseeable conduct can break the causal chain set in motion by a product defect--was championed in

14

Foley v. Clark Equip. Co., 523 A.2d 379 (Pa. Super. 1987). But as we stated in Dillinger and reiterate today, we believe that case is inconsistent with Pennsylvania strict products liability law. Dillinger, 959 F.2d at 443. In Foley, the Superior Court endorsed the admission of evidence of a plaintiff's contributory negligence in a section 402A suit. There, as here, the plaintiff was struck by an industrial vehicle when the operator failed to notice him. The plaintiff alleged that the manufacturer had defectively designed the vehicle in that, inter alia, the driver's view was improperly obstructed. The Superior court stated that "negligen[t] conduct is admissible where it is relevant to establish causation[,]" and plaintiff's allegedly negligent behavior is admissible for this purpose. Foley, 523 A.2d at 393. Nonetheless, we explained in Dillinger that

there is no meaningful way to reconcile the view that a plaintiff's negligence of the type involved in Foley should be admitted to undercut causation with the Supreme Court's prohibition of the introduction of a plaintiff's negligence to defeat liability. . . . In Foley, the plaintiff did not observe the oncoming forklift and did not move out of its way. Because the driver similarly had not noticed the plaintiff, the driver crashed into him. Although the plaintiff contended that the design of the forklift . . . was defective because, in part, . . . [of the] obstructed . . . view, the court permitted the defendant to introduce evidence of the plaintiff's inattention because the accident could have been avoided if the plaintiff had not acted negligently. . . . [T]here is no principled reason to prohibit evidence of the plaintiff's negligence in McCown but permit evidence of an almost identical character in Foley.

959 F.2d at 443-44. The fact that the plaintiff in Foley could have moved out of the way does not mean that Foley caused the accident, and that the driver (who also could have moved out of the way) did not cause the accident. Obstructed vision was a proximate cause of plaintiff's injuries in Foley; no meaningful distinction can be made between the operator's and the plaintiff's roles in causing the accident.

15

In Dillinger, although we did not endorse as dispositive the distinction between plaintiffs who "set [their] accident[s] in motion" and those who merely fail to stop them, we limited our holding to cases in which the plaintiff merely failed to stop his injury from being caused by a product defect. 959 F.2d at 444. This distinction is somewhat artificial, as plaintiff's conduct will often be susceptible to characterization in either category. But assuming that in directing the operator to swing the boom, Mr. Parks "set the accident in motion," we will now address the question of the permissible uses of evidence of plaintiff's conduct where such conduct has actively "set the accident in motion." Id.

Based on the foregoing discussion of the permissible uses of plaintiff's conduct evidence in section 402A actions, we find that the evidence of Mr. Parks' actions preceding his death were appropriate for the jury to consider only if they decided that those actions were not reasonably foreseeable or were otherwise extraordinary. In failing to put that test to the jury, the district court gave the impression that the jury's function was to assess the relative contributions of Mr. Parks and the machine's defect in causing Mr. Parks' death. As a matter of law, however, strict products liability demands that a plaintiff's foreseeable actions can never displace manufacturer liability when a product defect was a substantial factor in causing the plaintiff's injury.

B. Jury Instructions

When reviewing the sufficiency of jury instructions, our task is to determine whether the "instruction was capable of confusing and thereby misleading the jury." Bennis v. Gable, 823 F.2d 723, 727 (3d. Cir. 1987)(quoting United States v. Fischbach & Moore, Inc., 750 F.2d 1183, 1195 (3d Cir. 1984)). Defendants contend that the district court's instructions were sufficient. But the several pages of sometimes contradictory instructions nowhere state that the jury must not consider the foreseeable or ordinary uses of a product to be a legal cause of an accident, in the sense that foreseeable actions cannot limit a defendant's liability. The actions of Mr. Parks may be weighed in the causation calculation only if the jury finds them to have been

16

unforeseeable or extraordinary. Omission of this requirement is a clear violation of our holding in Sheldon, 718 F.2d at 608 ("On remand . . . the district court should . . . charge the jury that the intended use of a product includes all those [uses] which are reasonably foreseeable to the seller.").

Furthermore, our holding in Baker demonstrates that instructions that contain some characterizations of the law that are accurate will nonetheless be unacceptably tainted by the presence of other, misleading comments:

The district court stated in its opinion denying the new trial motion that its instruction that there may be more than one proximate cause, and that Outboard would be liable if a defect [were] "[a] proximate cause," adequately informed the jury that it could find[the defendant] to be negligent, and further find her negligence to be . . . `a' proximate cause[,] was greatly diminished [by other instructions]. . . . .[T]he case will be remanded for a new trial.

Baker, 595 F.2d 176, 184 (citation omitted).

In Eshbach, we reversed the district court because it failed to either "remove the question of [third-party] negligence entirely from the case or, if it was to be considered, to instruct the jury as to the limits of its application." 481 F.2d at 945. Strict liability means that an entity is liable for all accidents caused unless they are extraordinary or unforeseeable, regardless of the level of vigilance demonstrated by others.

In the present case, the district court's instructions to the jury spread over several pages of the transcript, and the summary of the instructions offered at the end misstated the appropriate analysis. The district court accurately stated,

if you find that a defect in a product was a substantial factor in bringing about harm, the manufacturer and/or seller of the product is responsible for that harm even though you may have found that there were other substantial factors as well as a defect in bringing about the harm.

17

App. at 414-15. But the district court impermissibly blurred the matter in summarizing the instructions:

 If you determine that the defendants manufactured and sold the excavator lacking an element necessary to make it safe for its intended use and that the lack of this element or elements was a substantial factor in bringing about the incident which resulted in Mr. Parks' death, then you will find that the defendants are liable to the plaintiff. Otherwise, you will find in favor of the defendants. Likewise, your verdict will be for defendants if you find that either the conduct of the decedent's employer . . . was a legal cause of the accident or if you find that the conduct of Mr. Parks himself or the conduct of his co-workers was also a legal cause of the accident and that the alleged defect was not a legal cause of the accident.

 So, in order to find for the defendants, you must find that the alleged defect was not **the** legal cause of the accident.

App. at 418-19 (emphasis added). Here, in concluding, the court instructed that the defendant will prevail if "you . . . find . . . that the alleged defect was not **the** legal cause of the accident." The use of "the" rather than "a" indicated that the legal cause must be predominant, or greater than all others, rather than one of several, of varying (albeit "substantial") weights.

As noted above, the primary reason that the instruction is fatally erroneous is not its particular wording but that it failed to require the jury to analyze whether Mr. Parks' actions were unforeseeable or extraordinary. If the jury found that the actions were neither unforeseeable nor extraordinary, it could not have found his actions to be "a legal cause" of his injury. Yet in the above-quoted instruction, the court indicated that Mr. Parks' conduct could be a "legal cause of the accident" without explaining that this was true only if the conduct were extraordinary or unforeseeable.

The centrality of foreseeability to Pennsylvania strict products liability law was recently reaffirmed in Childers v. Power Line Equip. Rentals, Inc., 681 A.2d 201, 208-209 (Pa.

18

Super. 1996), which held that evidence of an injured party's conduct was properly barred from a strict liability action because the defendant had failed to demonstrate that the injured party acted in an "unforeseeable," "reckless," "extraordinary," or "outrageous" manner. Here, having admitted evidence of plaintiff's conduct, the district court is obligated firmly to instruct the jury that a plaintiff's comparative fault is no defense to defendant liability, and should not be weighed against the manufacturer's alleged defect as a potential cause of the injury.

IV.

We now shift our focus from the jury instructions at trial to the discovery process. It appears that defendants did not produce discovery information concerning other similar accidents, of which there were at least five. Defendants concede that all information on these five other accidents came from the investigation conducted by plaintiff, and was not disclosed by defendants in discovery. AlliedSignal introduced specific information about these accidents only at trial, when arguing that evidence of their occurrence should be inadmissible. In addition, the record contains credible evidence that defendants failed to reveal the existence of safety mirrors on comparable machines, including the Gradall 880-C.

These apparent discovery abuses did not become evident until trial. While we make no definitive assessments as to the propriety of defendants' actions, on retrial the district court is directed to superintend with care and be confident that defendants properly and adequately disclose materials to which the plaintiff is rightfully entitled. Specifically, discovery orders that the court entered in the original trial, and which apparently were not heeded in full, shall be zealously policed by the district court.

V.

For the reasons stated above, we will reverse the district court's April 1, 1996, denial of appellants' motion for a new trial and remand for a new trial.

19

McKEE, Circuit Judge, concurring:

I join Judge Cowen's opinion. However, I write separately to state my understanding of what we hold today, and to comment upon the problems I perceive in the approach taken by our colleague, Judge Greenberg. In my view, that approach opens the door that the Pennsylvania Supreme Court closed in Azzarello v. Black Brothers, Co., 391 A.2d 1020 (Pa. 1978), and beckons comparative fault to reenter discussions of strict liability. Any discussion of strict liability must adhere to the policy considerations endemic to § 402A of the Second Restatement of Torts. As we noted in Dillinger v. Caterpillar, Inc., 959 F.2d 430 (3d Cir. 1992) in our discussion of Berkebile v. Brantly Helicopter Corp., 337 A.2d 893 (1975):

The law of products liability developed in response to changing societal concerns over the relationship between the consumer and the seller of a product. The increasing complexity of the manufacturing and distributional process placed upon the injured plaintiff a nearly impossible burden of proving negligence where, for policy reasons, it was felt that a seller should be responsible for injuries caused by defects in his products.

959 F.2d at 435 (citation omitted).

Judge Greenberg reads our decision in Dillinger as precluding "inject[ion]" of "negligence principles in strict liability actions" only in those circumstances where the plaintiff's conduct "exacerbated or failed to prevent an injury caused by the defect." Dissent at 28. Judge Greenberg also states that the law of Pennsylvania does not preclude consideration of a plaintiff's conduct where that "conduct . . . caused an accident independently of the defect in the product." Dissent at 28. However, Judge Greenberg over simplifies the range of causes that typically lie behind an injury. In most cases (including those relied upon by Judge Greenberg) a reasonable fact finder could conclude that the injury resulted from a combination of plaintiff's conduct and the challenged defect. Judge Greenberg's analysis would seem to permit the use of plaintiff's conduct in these cases. However, I think that

20

neither our previous decision in <u>Dillinger</u> nor our decision today allows principles of contributory negligence to govern a dispute merely because "plaintiff's conduct set the events leading to the accident in motion" as Judge Greenberg believes. Dissent at 28.

Judge Greenberg relies upon <u>Bascelli v. Randy, Inc.</u>, 488 A.2d 1110 (Pa. Super. Ct. 1985), and <u>Gallagher v. Ing</u>, 532 A.2d 1179 (Pa. Super. Ct. 1987) and our discussion of them in <u>Dillinger</u> to support his conclusion that we have barred evidence of plaintiff's conduct only in situations where that conduct exacerbates an injury caused by the defect, or failed to prevent an injury caused by it, and not where the conduct causes an injury independent of the defect. Clearly, one can not be held liable in a strict liability action unless the claimed defect <u>actually caused</u> the injury. In other words, the defect must have been "a substantial factor in bringing about the harm." <u>Powell v. Drumheller</u>, 653 A.2d 619, 622 (Pa. 1995), see dissent at 26. However, plaintiff's conduct is not relevant to this inquiry simply because such conduct may have also contributed to the injury. Before plaintiff's conduct can be admitted it must be viewed in context with the societal policies that lie behind strict liability and that assist in determining causation under <u>Dillinger</u>.

In <u>Bascelli</u>, the Pennsylvania Superior Court did hold that evidence that the plaintiff had been driving a motorcycle 100 miles per hour was relevant to establish causation, and could not be excluded merely because it also intended to show contributory negligence. 488 A.2d at 113. However, as we noted in <u>Dillinger</u>, <u>Bascelli</u> no longer provides us with guidance. In deciding <u>Bascelli</u>, the Pennsylvania Superior Court cited <u>Greiner v. Volkswagenwerk Aktiengeselleschaft</u>, 540 F.2d 85 (3d Cir. 1976) which, as we noted in <u>Dillinger</u>, was decided prior to <u>Azzarello</u>, <u>supra</u>, wherein the Pennsylvania Supreme Court "significantly broadened the scope of liability under § 402A." <u>Dillinger</u>, 959 F.2d at 442. In <u>Dillinger</u> we did state the following:

Of more significance, the plaintiff's conduct in <u>Bascelli</u> actively contributed to the cause of the accident, while [plaintiff's] conduct in this case was merely insufficient

21

to prevent the accident attributable to the defect of the [product]. Thus, here the evidence was compelling that the defect which resulted in the hose damage, rather than [plaintiff's] conduct, triggered the accident.

959 F.2d at 442.

That statement, however, is best understood when viewed in context with the policy repercussions of ignoring conduct which, though foreseeable, is so unreasonable as to not justify finding the manufacturer liable even though the manufacturer is deemed to be the "guarantor" of its products.1 I submit that had Bascelli been exceeding the speed limit by only 5 miles an hour rather than rocketing through space at 100 miles per hour his conduct would not have been relevant to determining if the alleged defect (as opposed to his own behavior) was responsible for his loss of control. However, his conduct was so outrageous that it amounted to assumption of the risk, misuse of the product, and highly reckless conduct. In Dillinger we hypothesized that all three of those theories continue to be permissible defenses in a § 402A proceeding. 959 F.2d at 445-46. I believe that absent conduct which is so outrageous as to fall into one of those three categories the policy considerations that hold a manufacturer liable as a guarantor of its product control. However, once the plaintiff's conduct becomes so unreasonable and extraordinary as to amount to either assumption of the risk, misuse of the product, or highly reckless conduct, that conduct becomes relevant to causation as society has no interest in protecting such plaintiffs from the consequences of that kind of irresponsibility. Moreover, it is unjust to shift the cost of such injury from the person whose outrageous conduct caused it (or contributed to it) to the manufacturer who will in turn pass that cost on to innocent consumers.

_____

1. As we noted in Dillinger:

The [supplier] of a product is the guarantor of its safety. The product must, therefore, be provided with every element necessary to make it safe for [its intended] use, and without any condition that makes it unsafe for [its intended use].

959 F.2d at 436 (brackets in original).

22

This policy concern is written into the law of strict liability through the mechanism of causation. Accordingly, we observed in <u>Dillinger</u>:

[t]he. . . issue of causation is raised when the plaintiff's action is so reckless that the plaintiff would have been injured despite the curing of any alleged defect, or is so extraordinary and unforeseeable as to constitute a superseding clause.

959 F.2d at 446 (internal quotations omitted) (internal citations omitted).

In Pennsylvania, products liability law "shift[s] the loss to the party who can most easily bear it." <u>Staymates v. ITT Holub Industries</u>, 527 A.2d 140, 143 (Pa. Super. Ct. 1987). However, this general policy does not operate where it would cause an inappropriate or unjust result. <u>Gallagher v. Ing</u>, 532 A.2d 1179 (Pa. Super. Ct. 1987) (cited by Judge Greenberg), is another example of this. There, the administratrix of the deceased driver of an automobile sued the manufacturer of the automobile alleging that a design defect had caused the decedent driver to lose control in a fatal car crash. The evidence that was produced at trial established that, at the time of the accident, the driver had a blood alcohol content of .18 percent. The jury was allowed to consider that evidence as it tended to establish that the decedent was "unfit to drive a vehicle safely," 532 A.2d at 1181, and that the intoxication; not the alleged defect, caused the accident. The Pennsylvania Superior Court noted that such evidence was appropriate, not because it established intoxication per se, but because it established intoxication to the extent of rendering the decedent unfit to drive. The court noted that the defendant had produced evidence that the decedent had been drinking scotch for a period of approximately 1-1/2 hours before driving his car home and that some witnesses had observed that he had been "driving at a high rate of speed on a dark, winding and hilly road approximately one mile from the scene of the accident." <u>Id</u>. at 1182. The manufacturer had also produced expert testimony as to the ability of someone with a blood alcohol concentration of .18 percent to safely operate a car. On appeal the court noted that with a blood alcohol level that high,

23

virtually every person, adult or child. . . is markedly impaired with respect to . . . judgment, the response time, . . . the coordination. . . all of these things are progressively and markedly impaired. . . forensic toxicologists and everybody else says that this kind of a blood alcohol level, a person's likelihood of being involved in a fatal accident is over 20 times greater than that of a sober person. . . He can still drive.. . but not safely.

532 A.2d 1182-3. Accordingly, the evidence was properly admitted to show that the decedent was "incapable of driving safely and that this was the legal cause of his loss of control of the vehicle he was driving." Id. at 1183.

Thus, Gallagher does not support Judge Greenberg's position to the extent that might at first appear although he correctly notes it as an example of a case where a plaintiff's conduct did set the events leading to the accident in motion. See dissent at 28. In theory, the conduct in Gallagher would have set the events leading to the accident in motion had the evidence shown marginal impairment or that the driver had exceeded the speed limit by 5 miles per hour. Yet, I do not believe that in those situations a jury could consider plaintiff's conduct on the issue of causation -- even if a manufacturer could show that had the plaintiff not been exceeding the speed limit, or not been slightly impaired, the particular defect would not have been sufficient by itself to cause loss of control. Few among us can honestly state that he or she has never exceeded a posted speed limit. That eventuality is most certainly foreseeable. Yet, that circumstance will not constitute an "intervening cause" and therefore justify consideration of plaintiff's conduct in a strict liability action unless that conduct rises to such a level as to constitute assumption of the risk, misuse of the product, or highly reckless conduct. See Dillinger, supra. This is so even though plaintiff's conduct "set the events leading to the accident in motion." Thus, Judge Greenberg reads too much into the holding of Gallagher. Moreover, the discussion in Gallagher focused upon the reliability of the blood test, and the propriety of admitting evidence of intoxication in view of its propensity to generate bias. There is almost no discussion of the strict

24

liability and causation issue that we address here. The court's entire discussion of strict liability is at the very end of the opinion and is, in its entirety as follows:

Appellant also argues that the trial court erred in,. . . (3) allowing appellee's counsel after ruling that comparative negligence principles had no application, to suggest to the jury that the defendant's negligence was the sole cause of the accident. We have examined these contentions carefully and conclude that they have been adequately analyzed and properly decided by the trial judge. Suffice it to say that appellant's contentions are lacking in merit and do not warrant a new trial.

532 A.2d at 1185.

In summary, I believe Judge Cowen correctly summarizes the state of Pennsylvania law under § 402A of the Restatement. Evidence of the decedent's actions in the instant case is appropriate only if a jury determined that such actions were "not reasonably foreseeable or were otherwise extraordinary." Majority Op. at 16, (emphasis added). I do not feel that Judge Greenberg's analysis allows for any meaningful distinction between circumstances where plaintiff's conduct becomes relevant to causation, and those where it is precluded by policy considerations that drive the doctrine of strict liability as enunciated by the Pennsylvania courts. If the alleged defect was "a substantial factor in bringing about the harm," absent assumption of risk, misuse of product, or highly reckless conduct, it is irrelevant whether plaintiff's conduct set the events in motion or merely failed to prevent an injury, and I do not read our decision in Dillinger to the contrary.

25

GREENBERG, Circuit Judge, dissenting.

Judge Cowen has written a thoughtful opinion in a difficult field of law, but I am forced to dissent because I interpret aspects of Pennsylvania products liability law fundamentally differently. I first will explain my view of the law and then explain my differences with the majority and the consequences stemming therefrom.

I agree with much of the majority's analysis of Pennsylvania law, including its discussion of the Pennsylvania Supreme Court's strong resistance to the inclusion of comparative fault principles in strict liability actions. I emphasize, however, that the Pennsylvania courts have been equally strong in maintaining the requirement that the plaintiff in a strict liability action bear the burden of showing both that the product was defective and that the defect proximately caused the injuries in question. See Berkebile v. Brantly Helicopter Corp., 337 A.2d 893, 898 (Pa. 1975) ("Neither can plaintiff recover by proving a defect in the product absent proof of causation, as where plaintiff sustains eye injury while not wearing defective safety glasses."); Carrecter v. Colson Equip. Co., 499 A.2d 326, 329 (Pa. Super. Ct. 1985) (plaintiff must show defect was a "substantial factor in bringing about" injuries suffered); Sherk v. Daisy-Hedden, 450 A.2d 615, 617 (Pa. 1982) ("Liability in ... strict liability is not imposed upon a manufacturer simply for the manufacture of a defective product.").

Thus, evidence of the plaintiff's or a third party's conduct, whether negligent or not, is admissible to rebut the allegation that a defect actually caused the injury. Nevertheless, the Pennsylvania Supreme Court has held that a plaintiff's or third party's conduct does not relieve the defendant of liability for a defect which was a substantial factor in bringing about the accident unless the conduct constituted a superseding or intervening cause of the injury. Thus, the defendant is liable as long as the defect was "a substantial factor in bringing about the harm." Powell v. Drumheller, 653 A.2d 619, 622 (Pa. 1995), citing Jones v. Montefiore Hosp., 431 A.2d 920, 923 (Pa. 1981). Of course, for a superseding cause to relieve a defendant whose conduct has been determined to be a

26

substantial factor in causing the harm, it must be "so extraordinary as not to have been reasonably foreseeable." Powell, 653 A.2d at 623; Kuisis v. Baldwin-Lima-Hamilton Corp., 319 A.2d 914, 920 (Pa. 1974). Accordingly, ordinary negligence will not do. The majority recognizes this point. See, e.g., Majority Op. at 7 ("[T]he plaintiff must show that: (1) a product defect (2) caused a harm (3) while the product was being used in a foreseeable manner."); Majority Op. at 9 ("If foreseeable, the jury must find for the plaintiff unless it finds that the defect did not play even a substantial, or more than negligible, role in causing the plaintiff's injury.").

Plainly, then, there is a distinction between a plaintiff's conduct which, rather than the defective product, was the cause of the injury and a plaintiff's conduct that was so extraordinary and unforeseeable that it was a superseding cause of the injury. Yet, if the injury is attributable to a plaintiff's conduct of either character, i.e., conduct that was the cause of the injury or unforeseeable superseding conduct, the defendant will not be liable even if its product was defective. An understanding of Pennsylvania product liability law requires that these concepts be kept separate so that a court understands the category into which the conduct fits when a defendant attempts to attribute the plaintiff's injury to his or her conduct.

The Pennsylvania Supreme Court has not spoken explicitly on the issue of how evidence of plaintiff and third-party conduct should be treated at trial, but the Pennsylvania Superior Court has addressed the issue in a number of cases. In Bascelli v. Randy, Inc., 488 A.2d 1110 (Pa. Super. Ct. 1985), the Superior Court held that evidence of the plaintiff's negligent conduct in driving his motorcycle approximately 100 miles per hour at the time of the accident was admissible to show that the excessive speed, and not the alleged defect in the product, caused the accident. Id. at 1113. In Gallagher v. Ing, 532 A.2d 1179 (Pa. Super. Ct. 1987), the court approved the admission of evidence of the decedent's blood alcohol level "to show that the decedent was so intoxicated that he was incapable of driving safely" and that the intoxication, rather than a product defect, caused the accident. Id. at 1183. These cases illustrate the use of a plaintiff's conduct to

27

demonstrate that the injury cannot be attributed to a defective product.

We considered how to treat a plaintiff's conduct in Dillinger v. Caterpillar, Inc., 959 F.2d 430 (3d Cir. 1992). In Dillinger, we refused to allow evidence of the plaintiff's contributory negligence because the evidence could show only that he failed to prevent an accident resulting from a sequence of events set into motion by a defect in the product. Id. at 442. Although in Dillinger we characterized the trend in the Pennsylvania Superior Court increasingly to inject negligence principles into strict liability actions as inconsistent with the rulings of the Pennsylvania Supreme Court, we drew a clear distinction between evidence of conduct which caused an accident independently of the defect in the product and evidence of conduct which exacerbated or failed to prevent an injury caused by the defect. We explicitly held only the latter type of evidence inadmissible. Id. at 442, 444 n.23. Thus, we distinguished Bascelli and Gallagher as cases where the plaintiff's conduct set the events leading to the accident in motion. A number of district courts in this circuit have applied this approach. See, e.g., Ballarini v. Clark Equip. Co., 841 F. Supp. 662, 665 (E.D. Pa. 1993), aff'd, 96 F.3d 1431 (3d Cir. 1996) (table); Kern v. Nissan Indust. Equip. Co., 801 F. Supp. 1438, 1441-43 (M.D. Pa. 1992), aff'd , 16 F.3d 404 (3d Cir. 1993) (table).

A reading of Dillinger which requires the exclusion of all evidence of foreseeable conduct by the plaintiff relating to causation would violate the clear requirement of the Pennsylvania Supreme Court that a plaintiff in a strict liability action must prove that the defect in the product caused the injuries. See Berkebile, 337 A.2d at 898. See also Kramer v. Raymond Corp., 840 F. Supp. 336, 338 (E.D. Pa. 1993) (holding that evidence of plaintiff's conduct is admissible to demonstrate that defect was not a cause of injury). After all, it hardly could be said that it is unforeseeable that a motorcycle driver will go at a high speed. Nevertheless, in Bascelli evidence of that speed was admissible to show that speed, rather than a product defect, caused the accident. Thus, Bascelli was not a superseding cause case.

It seems to me that the majority erroneously reads Dillinger to require the exclusion of all evidence of foreseeable conduct of a plaintiff relating to causation, for it indicates that the jury instruction was "fatally erroneous [because] it failed to require the jury to analyze whether Mr. Parks' actions were unforeseeable or extraordinary." Majority Op. at 18. The majority then indicates, erroneously in my view, that "[i]f the jury found that the actions were neither unforeseeable nor extraordinary, it could not have found his actions to be a `legal cause' of his injury." Id. The result the majority reaches does not take into account the distinction in Pennsylvania law between treatment of a plaintiff's negligence which is the sole cause of the injury and a plaintiff's negligence which combines with a defect in the product to cause the injury. Negligence of the second kind could defeat the claim only if so extraordinary as to be unforeseeable.

I now consider the jury charge. The district court instructed the jury that there were four possible causes of the accident, the alleged defect in the product, Parks' conduct, his employer's conduct, and his co-worker's conduct, all of which could be legal causes of the accident. App. at 416-17. The court further instructed the jury that if it found a defect and that "the defect was a substantial factor in causing the harm, then your verdict will be for the plaintiff even if you find ... [that any other conduct] were legal causes of the accident because I already told you there may be more than one legal cause. . . . So, in order to find for the defendants, you must find that the alleged defect was not the legal cause of the accident." Id. at 417-19.

I regard this charge as consistent with Pennsylvania law. The charge recognized that if a combination of a defect in the product and Parks' or another person's negligence caused the accident, the plaintiff would win. The majority makes much of the fact that the court used the phrase "the legal cause" rather than "a legal cause." Majority Op. at 17-18. While I agree that "a" is the proper article to use in this situation, I do not agree that this error so taints the charge as a whole that it could have misled the jury. The judge told the jury to consider the conduct only as it relates to the initial causation of the accident to evaluate which

29

events were substantial factors in bringing about the accident. Furthermore, the interrogatory to which the jury answered "No," thereby returning a verdict for the defendant, read as follows: "Was the defect in the excavator a substantial factor in bringing about Mr. Parks' death?" The jury of course, had the interrogatory when it deliberated and in these circumstances I cannot believe that the use of "the" rather than "a" in the charge mattered.

In my view, the majority's holding that a foreseeability charge was required is fundamentally wrong because the plaintiff and third-party conduct was not presented to the jury as a superseding cause of the accident. Rather, the defense advanced that conduct as the sole cause of the accident. In a superseding cause situation, the defect is still a "but for" cause of the accident, or a substantial factor, but the superseding cause of the accident may excuse the defendant from liability if not reasonably foreseeable. Here, the court charged the jury to consider whether the alleged defect was a "substantial factor" in causing the accident and the jury found that it was not. It seems to me to be clear that when a court lays the precepts of Pennsylvania law against the charge, it should conclude that the charge did not include a reversible error.

The main difference between my view and the majority's view, besides the result we reach, is the majority's holding that "the threshold question is whether the plaintiff's actions were foreseeable." Majority Op. at 9. I do not understand how it can make this statement, because it confuses substantial factor causation, i.e., the responsibility of the defendant in the first instance, with superseding causation. A superseding cause, if not reasonably foreseeable, breaks the chain of causation, but the jury must first find that there was a chain. The majority's holding eliminates this requirement and the majority says that "[c]ausation may be shown by process of elimination. . . ." Majority Op. at 10. The majority does not have case law to support this conclusion. The cases it cites deal with accidents where superseding causes exist after the defect first is found to be a substantial factor, e.g., Decorative Precast Stone Erectors, Inc. v. Buckrus-Erie Co., 493 F. Supp. 555, 557 (W.D. Pa. 1980), aff'd , 642 F.2d 441

30

(3d Cir. 1981) (table), where the plaintiff allegedly recklessly exposed himself to a defect, <u>Childers v. Power Line Equip. Rentals, Inc.</u>, 681 A.2d 208-09 (Pa. 1996), where substantial change or misuse of a product is charged, <u>Eck v. Powermatic Houdaille</u>, 527 A.2d 1012, 1019 (Pa. 1987), or where the existence of a defect rather than causation is at issue, <u>see Schell v. AMF, Inc.</u>, 567 F.2d 1259, 1262 (3d Cir. 1977).

We face none of those situations in this case. The issue at trial here was whether the defect in the product was a substantial factor in causing the accident. The jury instructions correctly said that if it was the plaintiff must win. The jury found for the defendant by answering an interrogatory expressly finding that the defect was not a substantial factor in bringing about the accident. The majority will not allow a verdict based on the jury's answer to this interrogatory to stand because it holds that a foreseeable action by the plaintiff cannot be a "legal cause" of an accident. Majority Op. at 17-18. "Instead, it is removed from the picture, and liability attaches to the remaining causal actor or actors." Majority Op. at 12. I believe that this approach is simply wrong for it eliminates the jury's role in determining whether a defect is a substantial factor in an accident. It turns all cases involving causation into superseding cause cases in the sense that unless the plaintiff's or third party's conduct is not foreseeable, it cannot be the legal cause of the accident. As <u>Bascelli</u>, the 100 miles per hour motorcycle case, so clearly demonstrates, this is wrong. The majority opinion overlooks the fact that the jury first must find a chain of causation before considering whether a superseding cause breaks the chain. It assumes that a chain exists.

Under the majority's view, a defendant could be found liable for a defect even if the defect did not contribute to the happening of the accident, because the majority removes from the case the possibility that foreseeable conduct of the plaintiff or a third party was the cause of the accident. It is important to remember that just because an accident is a type which a defect might cause does not mean that the defect necessarily did cause the accident. It is up to the jury to make this determination, not the court. Thus, I do

31

not believe the Pennsylvania Supreme Court would condone the result reached here. The majority's opinion will force the district court to try the case on the remand on incorrect principles of law and will require it to deliver an incorrect charge.

In responding to my dissent in which I emphasize that the majority does not take into account the distinction between a plaintiff's negligence which is the sole cause of the injury and a plaintiff's conduct that was an unforseeable superseding intervening cause of the injury, the majority sets forth the following:

The instant case is precisely of the second type: the jury explicitly answered yes to the question, `Was the Gradall excavator defective at the time it was manufactured and sold?' App. at 432. The machine's defect was impaired visibility of precisely the area in which the accident occurred. In accordance with the dissent's above description, the manufacturer of the defective product should be held liable unless the plaintiff's actions were unforseeable.

Majority Op. at 9-10 n.3.

I deduce from the foregoing analysis that the majority, sitting as a court of appeals, must be determining as a matter of law that the nature of the defect meant it had to be a substantial factor in bringing about the accident. I cannot understand how the majority can make this determination because it is deciding the proximate cause issue and deciding it contrary to the jury which expressly answered "no" to the following question: "Was the defect in the excavator a substantial factor in bringing about Mr. Parks' death?" The fact that the machine had impaired visibility no doubt led the jury to find that it was defective. Yet that finding simply did not determine that the defect was a substantial factor in bringing about the accident. Thus, just as I have indicated already, the majority turns all cases involving causation when a plaintiff's or third party's conduct is involved into superseding cause cases so that unless the plaintiff's or third party's conduct is unforeseeable, it cannot be the legal cause of the accident.

32

As far as I am concerned this appeal is being decided incorrectly which in itself is unfortunate. But the consequences of the majority opinion go beyond this case. There are many diversity of citizenship products liability cases under Pennsylvania law tried in this circuit. From the time of the publication of the opinion in this case the district courts will be confronted with following Pennsylvania law, as announced by the Pennsylvania courts and permit the jury to conclude that a plaintiff's or third party's conduct, even if foreseeable, can be the sole proximate cause of an injury, or following the majority's opinion which makes clear that the injury can be attributed to plaintiff's or third party's conduct only if that conduct is not foreseeable. I presume that the district courts will follow the majority's opinion here and thus the outcome of a case may be determined on whether it is tried in the state or federal court. This is serious business.

Judge McKee's concurrence misinterprets the holding I suggest would be appropriate here and thus it does not persuade me that my views are wrong. I do not believe, as Judge McKee suggests I do, Concurrence at 20-21, that a plaintiff's conduct can be used to relieve a defendant of liability merely because it contributed to an accident caused by a defect. In fact, I believe the opposite to be true. Yet, a jury must determine whether the defect is actually a substantial factor in causing the accident and thus must consider what else, including a plaintiff's conduct, could have caused the accident without contribution from the defect. Thus, I agree with Judge McKee when he states: " `[i]f the alleged defect was a substantial factor in bringing about the harm,' absent assumption of risk, misuse of product, or highly reckless conduct, it is irrelevant whether plaintiff's conduct set the events in motion or merely failed to prevent an injury . . . ." Concurrence at 25. Unfortunately, however, the result being reached here will not allow the jury to decide whether the defect is "a substantial factor in bringing about the harm."

Indeed, Judge McKee's explanation of Judge Cowen's opinion effectively admits this point because, quoting Judge Cowen, he indicates that "[e]vidence of the decedent's actions in the instant case is appropriate only if a jury

33

determined that such actions were `not reasonably foreseeable or were otherwise extraordinary.' " Concurrence at 25. This statement simply cannot be correct because it removes from the jury the opportunity to consider whether the defect was "a substantial factor in bringing about the harm." A plaintiff's unexceptionable conduct may cause a plaintiff using a defective product to be injured without the defect in the product contributing to the injury. For example, a car might be delivered with defective brakes but if a plaintiff driving the car who is about to get into an accident, whether or not he is negligent, does not use the brakes, then the defect simply is not a substantial factor in bringing about the harm even if the brakes would not have worked if the plaintiff had applied them. In such a case the defendant should be able to establish that the defective brakes had nothing to do with the accident and the defendant should win in a products liability case. See Berkebile, 337 A.2d at 901 ("Whether decident actually attempted autorotation is relevant to the issue of causation. If the jury were to conclude, for example, that a non-defective system would allow two seconds for autorotation and that the decedent did not attempt autorotation for three seconds; even if a defect was shown, it would not have been the proximate cause of the crush.").

The fact in my brakes example that the plaintiff might have been negligent is immaterial and thus if the plaintiff was negligent his negligence would not bar his claim. Rather, he would lose because the defect was not a substantial factor in bringing about the accident. The district court properly tried the case applying these principles which Pennsylvania law (and probably the law through the United States) establishes, and thus we should affirm.

In the circumstances I am constrained to dissent.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

34