

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-28-2007

# Christopher v. Nestlerode

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3516

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Christopher v. Nestlerode" (2007). *2007 Decisions.* Paper 872.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/872

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 05-3516 and 05-3837

RAPHAEL CHRISTOPHER,

Appellant at No. 05-3516

v.

FREDERICK NESTLERODE,
MATTHEW KERR, in their individual capacities;
WILLIAM HOSE; THE COUNTY OF YORK, PENNSYLVANIA,

Appellants at No. 05-3837

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civil Action No. 04-cv-00977
(Honorable Christopher C. Conner)

Argued November 6, 2006

Before:  SCIRICA, *Chief Judge*, BARRY and ALDISERT, *Circuit Judges*

(Filed: June 28, 2007)

GARY S. GILDIN, ESQUIRE (ARGUED)
150 South College Street
Carlisle, Pennsylvania 17013

PAULA K. KNUDSEN, ESQUIRE
American Civil Liberties Foundation of Pennsylvania
105 North Front Street, Suite 225
Harrisburg, Pennsylvania 17101
        Attorneys for Appellant/Cross-Appellee,
        Raphael Christopher

DAVID L. SCHWALM, ESQUIRE (ARGUED)
CRYSTAL H. WILLIAMSON, ESQUIRE
Thomas, Thomas & Hafer
305 North Front Street
P.O. Box 999
Harrisburg, Pennsylvania 17108-0999
  Attorneys for Appellees/Cross-Appellants,
  Frederick Nestlerode, Matthew Kerr,
  William Hose and The County of York, Pennsylvania

---

OPINION OF THE COURT

---

SCIRICA, *Chief Judge*.

This is a civil rights action under 42 U.S.C. § 1983 alleging racial profiling in a traffic stop. The plaintiff is an African American Pennsylvania State Trooper who was driving his personal automobile while off duty. The defendants are two Caucasian York County Deputy Sheriffs who made the traffic stop, the York County Sheriff, and York County. Plaintiff Raphael Christopher appeals the District Court's grant of summary judgment in favor of Sheriff William Hose and the County, as well as a jury verdict in favor of Deputies Frederick Nestlerode and Matthew Kerr. Additionally, Hose, the County, Nestlerode, and Kerr ("the York Defendants") cross-appeal from any and all orders denying their motions.

We will affirm the final judgment in favor of Hose and the County. We will affirm in part and vacate in part the final judgment in favor of Nestlerode and Kerr, and will remand for a new trial on Christopher's Fourth Amendment claim on the basis of error in

2

the District Court's jury instruction. We do not reach the York Defendants' cross-appeal and will dismiss it.

## I.

### A.

On August 5, 2003, Christopher was driving in the right-hand lane of a two-lane, one-way street in York, Pennsylvania, with a posted speed limit of twenty-five miles per hour. Nestlerode was driving a marked car in the left-hand lane and training Kerr in traffic enforcement. The road surface was wet from a light rain. Parked cars were present, but there were no pedestrians on the street. Upon spotting Christopher's automobile, Nestlerode made an immediate estimate that it was traveling at between fifty and fifty-five miles per hour. Accordingly, Nestlerode pulled Christopher over to cite him for driving at an unsafe speed, a violation of § 3361 of the Pennsylvania Motor Vehicle Code. Kerr agreed with Nestlerode that Christopher was driving at an unsafe speed, and aided Nestlerode by notifying the Sheriff's Department and monitoring Christopher's automobile while Nestlerode spoke with Christopher. During the course of the stop, Nestlerode noticed that the addresses on Christopher's driver's license and automobile registration did not match, a violation of § 1515 of the Pennsylvania Motor Vehicle Code, and also cited him for that offense.

At trial, Nestlerode testified he had decades of experience enforcing and training subordinates in enforcement of the Pennsylvania Motor Vehicle Code. He had worked in law enforcement in Pennsylvania since 1969. As a police corporal in Springettsbury

3

Township, York County in the 1980s, Nestlerode had implemented a departmental training program in traffic enforcement. At the time he stopped Christopher, he was the York County Sheriff's Department field training officer. Certified in the use of several speed timing devices, Nestlerode testified he was aware that a police officer's testimony on a vehicle's speed was inadmissible in Pennsylvania courts without the use of such a device. Nestlerode testified he had not had "probable cause" to stop Christopher for exceeding the posted speed limit (a different violation from driving at an unsafe speed), because he had not measured Christopher's speed with a speed timing device. His testimony also displayed familiarity with state court decisions on deputy sheriffs' authority to make traffic stops.

B.

The Pennsylvania Motor Vehicle Code contains separate prohibitions on driving in excess of a posted speed limit (§ 3362) and driving at an unsafe speed regardless of the posted limit (§ 3361). Christopher was cited for violating the latter, though the District Court instructed the jury on both offenses. The prohibition on unsafe speed is context-dependent: "No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing . . . ." 75 Pa. Cons. Stat. Ann. § 3361 (West 2006). On the other hand, a citation for exceeding the speed limit must state precisely how fast the motorist was driving. *Id.* § 3366. Furthermore, that rate of speed must have been electronically or mechanically measured—it may be measured by an officer referring to the calibrated speedometer in a

4

police car, but only if the motorist's vehicle is observed for at least 3/10 of a mile. *Id.* §

3368. It is undisputed that Nestlerode's marked car did not have a calibrated

speedometer, and that Nestlerode and Kerr observed the speed of Christopher's

automobile for less than 3/10 of a mile.

While the Motor Vehicle Code details prohibited conduct by motorists,[1] the

Pennsylvania Supreme Court has weighed in on when a law enforcement officer may

have reason to believe the Motor Vehicle Code is being violated. In *Commonwealth v.*

*Whitmyer*, the court found that, in order for an officer to have "probable cause" under the

Fourth Amendment to stop a motorist for violating § 3361 (unsafe speed), the officer

must observe either (1) a vehicle's speed with a speed timing device (for 3/10 of a mile if

the device is a calibrated speedometer) or (2) special hazards. 668 A.2d 1113, 1117–18

(Pa. 1995). *Whitmyer* also appears to require use of a speed timing device in order for an

officer to have Fourth Amendment "probable cause" to stop a motorist for violating §

3362 (exceeding the speed limit).[2] In fact, Nestlerode testified that a speed timing device

---

[1] It also states: "Whenever a police officer . . . has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle . . . ." 75 Pa. Cons. Stat. Ann. § 6308(b) (West 2006). This standard was changed from "probable cause" to "reasonable suspicion" effective February 1, 2004. *See Commonwealth v. Spieler*, 887 A.2d 1271, 1275 n.2 (Pa. Super. 2005).

[2] Section 3368 of the Motor Vehicle Code, which lays out the speed measurement requirements, explicitly applies to § 3362 (exceeding the speed limit). But in *Whitmyer* the court interpreted those requirements as also applying to § 3361 (unsafe speed), even though the text of the statute does not state so. 668 A.2d at 1117–18, 1115 n.5. Several Pennsylvania Superior Court cases state that a speed timing device is required for

(continued...)

5

was required for "probable cause" to stop a motorist for violating § 3362, and that he had not had "probable cause" to stop Christopher for that offense because he had used no such device.

C.

Christopher challenged both citations. A District Justice found him not guilty of driving at an unsafe speed but guilty of failing timely to notify PennDOT of his new address. Christopher appealed this conviction, contending Nestlerode and Kerr lacked "probable cause" for the underlying traffic stop, so that his license and registration were inadmissible. Ruling on both suppression and the merits, the York County Court of Common Pleas found there was "probable cause" for the stop and affirmed Christopher's conviction for failing to report his address change. Christopher appealed to the Pennsylvania Superior Court, which reversed, relying on *Whitmyer* to find there was no "probable cause" for the stop. The Superior Court considered both sources of "probable cause" under *Whitmyer* to believe a violation of § 3361 has occurred—a valid measurement of speed or special hazards. It found Nestlerode's speed estimate was statutorily invalid because it was not obtained with a speed timing device. Furthermore, because Nestlerode had testified visibility was not impaired and that he had observed no

------

²(...continued)
conviction under § 3362. *See, e.g.*, *Commonwealth v. Gordon*, 633 A.2d 1199, 1201–03 (Pa. Super. 1993). Moreover, in *Shamnoski v. PG Energy, Division of Southern Union Co.*, 858 A.2d 589, 601 (Pa. 2004), the Pennsylvania Supreme Court stated that, whereas § 3361 sets forth a "traditional reasonable man standard," § 3362 "speaks in absolutes; there is no room for the flexibility of the reasonable man standard."

6

pedestrians or other moving vehicles in the vicinity, the Superior Court found special hazards could not have formed the basis for "probable cause." The court concluded there was insufficient evidence Nestlerode formed an objectively reasonable belief that Christopher was violating § 3361, and held that because Christopher's license and registration had been obtained pursuant to a traffic stop for which there was no "probable cause," they should have been suppressed.

## II.

Christopher sued the York Defendants under 42 U.S.C. § 1983, alleging four counts: (1) by stopping Christopher's automobile without "probable cause," Nestlerode and Kerr committed an unreasonable seizure in violation of Christopher's Fourth Amendment rights; (2) by purposefully stopping Christopher on account of his race, Nestlerode and Kerr deprived Christopher of the equal protection of the law in violation of his Fourteenth Amendment rights; (3) through his deliberate indifference as to supervision, training, and ratification of Nestlerode and Kerr's actions, Hose caused the violations of Christopher's Fourth and Fourteenth Amendment rights; and (4) the County, through Hose's action and inaction, was liable for the violations of Christopher's Fourth and Fourteenth Amendment rights. Second Am. Compl. ¶¶ 3–43, *Christopher v. Nestlerode*, No. 04-0977 (M.D. Pa. Jan. 3, 2005). Following discovery, the parties filed cross-motions for summary judgment.

The District Court granted summary judgment in favor of Hose and the County, but denied all other summary judgment motions. Noting that § 1983 liability can only be

7

imposed on a person acting under color of state law who directly participates in or causally facilitates the violation of an individual's federally secured rights, *Christopher v. Nestlerode*, 373 F. Supp. 2d 503, 511 (M.D. Pa. 2005), the court found Hose's conduct had not met the standard for liability through deliberate indifference, *see id.* at 523 ("Neither Hose nor the County of York had any reason to suspect that an incident of this type would arise or that additional training was necessary."). A jury trial followed on the claims against Nestlerode and Kerr.

In instructing the jury on "probable cause" under the Fourth Amendment, the District Court stated: "The relevant question for these purposes is whether based on the facts then known to the officer an objective, reasonable person could conclude that the plaintiff had committed any criminal offense." (J.A. 1235.) It added that the specific criminal offenses the jury should consider were violations of §§ 3361 (unsafe speed) and 3362 (exceeding the speed limit), even though (1) Nestlerode testified he had not had "probable cause" to stop Christopher for violating § 3362 and (2) Christopher had not been cited for violating § 3362. The court specified that the Motor Vehicle Code's speed timing requirements (which are viewed as relevant to "probable cause" by the Pennsylvania Supreme Court) "are not relevant to the issue of whether probable cause existed to believe that the plaintiff had committed a violation of either Section 3361 or Section 3362 . . . . You must not consider these requirements in considering whether probable cause existed." (J.A. 1237–38.)

8

On the Fourteenth Amendment equal protection claim, the District Court instructed the jury that discriminatory intent may be inferred based on evidence that the defendant did not believe or could not reasonably have believed that his act served a legitimate purpose.  It added:

> In other words, you may consider the defendant's subjective beliefs as to the grounds for the stop, including the defendant's understandings of the requirements of Pennsylvania law that an officer must follow a vehicle for 3/10 of a mile and must use a calibrated speedometer in order to obtain a valid estimate of speed in deciding whether the defendant reasonably believed that the act served a legitimate purpose and whether the defendant acted with discriminatory intent.

(J.A. 1243.)  The court specified: "you may find that an act has a discriminatory purpose even if you find that it served another legitimate purpose."  (J.A. 1242–43.)

The jury returned a verdict for Nestlerode and Kerr, finding Christopher had failed to prove by a preponderance of the evidence all the elements either of an unreasonable seizure claim or of an equal protection claim.  Christopher appealed both the jury verdict and the grant of summary judgment in favor of Hose and the County.  The York Defendants cross-appealed "from any and all Memorandum Decisions and Orders, or other final orders denying Defendants' Motions."  Notice of Cross-Appeal, *Nestlerode*, No. 04-0977 (M.D. Pa. Aug. 11, 2005).

III.

A.

The District Court had jurisdiction over Christopher's § 1983 action under 28 U.S.C. §§ 1331 and 1343(a)(3), and we have jurisdiction over Christopher's appeal under

9

28 U.S.C. § 1291. Ordinarily, only a party "aggrieved" by a judgment or order of a district court may exercise the statutory right to appeal therefrom, and a party that receives all that it has sought generally is not aggrieved by the judgment affording the relief. *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 333 (1980). *See also IPSCO Steel, Inc. v. Blaine Constr. Corp.*, 371 F.3d 150, 154 (3d Cir. 2004). When a prevailing party seeks to appeal an adverse ruling collateral to the judgment in its favor, it may not do so if the collateral ruling was not necessary to the judgment. *Partmar Corp. v. Paramount Pictures Theatres Corp.*, 347 U.S. 89, 100 n.6 (1954). The York Defendants prevailed on the merits and seek to cross-appeal from collateral rulings adverse to them but unnecessary to support the judgments in their favor. We hold they lack standing to bring their cross-appeal, and do not consider it.

Where, as here, a party properly objects to a jury instruction, we exercise plenary review to determine whether the instruction misstated the applicable law. *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 424 F.3d 336, 338 (3d Cir. 2005). We must consider "whether the charge, taken as a whole, properly apprised the jury of the issues and the applicable law." *Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 275 (3d Cir. 1998). We review the phrasing of jury instructions for abuse of discretion to determine whether they were misleading. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 929 (3d Cir. 1997). Harmless errors in a jury instruction that do not prejudice the complaining party are not sufficient grounds on which to vacate a judgment and order a new trial, *Watson v. S.E. Penn. Transp. Auth.*, 207 F.3d 207, 221–22 (3d Cir. 2000), but error in a jury

instruction will be harmless only if it is "highly probable" that it did not affect the verdict, *Hill v. Reederei F. Laeisz G.M.B.H., Rostock*, 435 F.3d 404, 410 (3d Cir. 2006). *See also Mosley v. Wilson*, 102 F.3d 85, 95 (3d Cir. 1996) (finding inapplicable jury instruction on deliberate indifference in § 1983 action was capable of misleading jury into improperly considering law enforcement officer's subjective intentions, and was thus not harmless error).

We exercise plenary review over the grant or denial of summary judgment. Summary judgment is appropriate if, viewing all evidence in the light most favorable to the non-moving party and giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Creque v. Texaco Antilles Ltd.*, 409 F.3d 150, 152 (3d Cir. 2005).

B.

Section 1983 creates liability for anyone who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (2000). Here, Christopher contends the York Defendants deprived him of his right to be secure against "unreasonable searches and seizures." U.S. Const. amend IV.

"[A] traffic stop will be deemed a reasonable 'seizure' when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." *United States v. Delfin-Colina*, 464

11

F.3d 392, 398 (3d Cir. 2006) (citing *Whren v. United States*, 517 U.S. 806, 808–09

(1996); *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).[3]  A law enforcement officer's subjective

intentions "play no role in ordinary . . . Fourth Amendment analysis."  *Whren*, 517 U.S. at

813.  Rather, demanding "objective specificity," we have stated that "[t]he ultimate

question is whether a reasonable, trained officer standing in [the seizing officer's] shoes

could articulate specific reasons justifying [the seized individual's] detention."  *Johnson*

*v. Campbell*, 332 F.3d 199, 206 (3d Cir. 1996).

This Court recently rejected the argument that an arrest made in violation of state

law is *per se* unreasonable under the Fourth Amendment, but advocated a totality of the

circumstances approach:

> [T]he validity of an arrest under state law must never be confused or conflated
> with the Fourth Amendment concept of reasonableness[;] the validity of an arrest
> under state law is at most a factor that a court may consider in assessing the
> broader question of probable cause.

*United States v. Laville*, 480 F.3d 187, 192 (3d Cir. 2007).  The Supreme Court has held

that the Fourth Amendment totality of the circumstances inquiry includes the officer's

"own experience and specialized training to make inferences from and deductions about

the cumulative information."  *United States v. Arvizu*, 534 U.S. 266, 273 (2002).  The

District Court's Fourth Amendment instruction was both legally erroneous and

misleading, because it instructed the jury that the state law speed timing requirements,

---

[3] In *Delfin-Colina*, 464 F.3d at 397, we reaffirmed our understanding that "probable
cause" is *not* required for a traffic stop to be reasonable under the Fourth Amendment.

12

rather than being a possible factor in a totality of the circumstances Fourth Amendment analysis, were simply "not relevant" to "probable cause," and that the jury "must not consider" those requirements and Nestlerode's knowledge of them. (J.A. 1237–38.)

Nestlerode testified about his extensive knowledge of the Motor Vehicle Code, as well as his awareness of case law governing traffic stops. It has been the law in Pennsylvania since 1995 that without a speed timing device an officer cannot have "probable cause" to stop a motorist for driving at an unsafe speed in violation of § 3361 based on an estimate of the vehicle's speed alone. *See Whitmyer*, 668 A.2d at 117–18. And Nestlerode testified that, because he had not used a speed timing device, he had lacked "probable cause" to stop Christopher for violating § 3362, as well. But he also testified as to his ability to calculate vehicle speed instantaneously: "I'm very familiar with timing devices, and I have used stopwatches standing out on the highway and throughout all my years experience I have come to be able to estimate speed I would say very efficiently . . . ." (J.A. 671.) After hearing Nestlerode's testimony on his ability to estimate speeds instantaneously, the jury was instructed that it must not consider the speed timing device requirements (which Nestlerode had not complied with) in determining whether Nestlerode and Kerr had "probable cause" to stop Christopher.

The objective Fourth Amendment reasonableness inquiry requires examining the totality of the circumstances, *Laville*, 480 F.3d at 189, that is, whether a law enforcement officer with Nestlerode's experience could have held an objectively reasonable belief that Christopher was violating §§ 3361 or 3362. We believe the jury should have been

13

instructed that it could choose to consider, as part of this inquiry, the requirements for "probable cause" under Pennsylvania law to stop a motorist for violating those provisions as one of the factors in its totality of the circumstances analysis. Because the District Court instructed the jury that these requirements must not be considered, that instruction was both legally erroneous and misleading.

After having heard Nestlerode's speed estimate and his basis for it, the jury was instructed to ignore the state law requirements with which it was inconsistent. This error was not harmless, because it is not "highly probable" that the instruction to ignore Pennsylvania speed timing requirements did not affect the jury's finding on "probable cause." *See, e.g.*, *Fisher v. Volz*, 496 F.2d 333, 338 (3d Cir. 1974) (holding instruction that allowed jury to return verdict against § 1983 plaintiffs where warrantless home entries by police could be justified by exigent circumstances even in the absence of probable cause was not harmless error, even though jury's verdict against plaintiffs might actually have been based on probable cause). Accordingly, the instruction constituted reversible error.[4]

C.

1.

---

[4] We recognize that, until our holding in *Laville*, the standard in this Circuit was unsettled. The able District Judge's scholarly summary judgment opinion cogently and comprehensively discussed case law and scholarship on this question.

14

Christopher contends he is entitled to a new trial on his equal protection claim. Because both parties linked the presence or absence of "probable cause" to whether Nestlerode and Kerr stopped him on account of his race, Christopher contends the court's "probable cause" jury instruction tainted his equal protection claim.

The Equal Protection Clause "prohibits selective enforcement of the law based on considerations such as race." *Whren*, 517 U.S. at 813. As we explained in *Carrasca v. Pomeroy*, 313 F.3d 828, 836 (3d Cir. 2002), "[t]he fact that there was no Fourth Amendment violation does not mean that one was not discriminatorily selected for enforcement of a law. . . . [E]qual protection claims under the Fourteenth Amendment require a wholly separate analysis from . . . claims under the Fourth Amendment" (internal citations omitted). Whereas a law enforcement officer's subjective intentions have no place in Fourth Amendment analysis, they are relevant to equal protection analysis. *Gibson v. Superintendent of N.J. Dep't of Law and Pub. Safety*, 411 F.3d 427, 440–41 (3d Cir. 2005). Here, the District Court's equal protection instruction correctly stated: (1) the equal protection inquiry is distinct from the "probable cause" inquiry, and the presence of "probable cause" does not mean an officer acted without discriminatory intent; (2) the equal protection inquiry considers both subjective and objective intent; and (3) the jury could consider state law speed timing requirements in determining whether Nestlerode and Kerr acted with discriminatory intent.

Jury instructions do not constitute reversible error so long as, "taken as a whole and viewed in the light of the evidence, [the instructions] fairly and adequately submit the

15

issues in the case to the [jurors without confusing or misleading them]." *United States v. Simon*, 995 F.2d 1236, 1243 n.9 (3d Cir. 1993). The equal protection instruction here was fair, adequate, and correct. Nor was Christopher's equal protection claim tainted by the District Court's Fourth Amendment instruction.[5]

2.

Christopher contends the District Court's grant of summary judgment in favor of Hose and the County was improper. A plaintiff claiming municipal § 1983 liability for a constitutional violation through failure to train[6] is held to the exacting requirement of showing "deliberate indifference" on the part of a municipal policymaker, such that the policymaker is effectively the moving force behind the violation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [municipality], for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390–91. There was no pattern of racial profiling by the deputies under Hose's command.

---

[5] Christopher cites our decision in *Parks v. Alliedsignal, Inc.*, 113 F.3d 1327, 1336 (3d Cir. 1997), for the proposition that "'instructions that contain some characterizations of the law that are accurate may nonetheless become unacceptably tainted by the presence of other, misleading comments.'" Christopher Reply Br. 30. *Parks*, however, concerned a single instruction that was internally inconsistent.

[6] Christopher contends Hose and the County were liable for failure to promulgate policies, failure to train, and failure to monitor or supervise. We apply the same "deliberate indifference" standard to all three arguments. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) (noting "courts have adopted the 'deliberate indifference' standard in other policy and custom contexts").

16

*See Nestlerode*, 373 F. Supp. 2d at 523. A single constitutional violation can still provide the basis for municipal liability for failure to train, *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407–09 (1997), but only where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights" that the policymaker's inaction amounts to deliberate indifference. *Canton*, 489 U.S. at 391. We do not believe there was a genuine issue of material fact whether the deliberate indifference standard was met here.

The Court of Appeals for the Second Circuit has stated that, in order to show the need for more or different training was so obvious, "the plaintiff must show that the situation . . . presents the employee with a difficult choice of the sort that training or supervision will make less difficult." *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992). Where a law enforcement officer's duty is clear (e.g., not to commit perjury when testifying at the trial of a criminal defendant whom the officer knows to be innocent), no such difficult choice is presented, and the need for more or different training is not so obvious. *Id.* at 299–300. As to the inadequacy of training being so likely to result in a constitutional violation, "the identified deficiency in the training program must be closely related to the ultimate injury." *Canton*, 489 U.S. at 391.

Nestlerode testified as to his "understanding [that] you should never base any traffic stop . . . on someone's race or ethnic group. Abolutely never." (J.A. 628–29.) The term "racial profiling" appears nowhere in the Deputies' training materials, and no specific Sheriff's Department policy cautioned deputies not to make traffic stops on the

17

basis of race. But among the training materials Nestlerode and Kerr did receive were instructions to: "Above all else, respect the Constitutional Rights of all men and women to Liberty, Equality, and Justice" (J.A. 1981); "never permit . . . prejudices . . . to influence . . . decisions" (JA. 1981); make traffic stops only when there is proper cause to believe a violation has been committed (J.A. 3037); and "treat everyone with dignity and respect" (J.A. 3037). We conclude there was no genuine issue of material fact such that a reasonable jury could have found both that (1) deputy sheriffs in York County were faced with a "difficult choice" as to whether to engage in racial profiling that any additional training would have made easier and (2) the training deputy sheriffs received was so inadequate as to render an incident of racial profiling likely. The District Court properly granted summary judgment in favor of Hose and the County.

IV.

We will affirm the final judgment in favor of Hose and the County. We will affirm in part and vacate in part the final judgment in favor of Nestlerode and Kerr, and will remand for a new trial on Christopher's Fourth Amendment claim on the basis of error in the District Court's jury instruction. We do not reach the York Defendants' cross-appeal and will dismiss it.

Barry, Circuit Judge, dissenting from § III(B)

18

Deputy Sheriff Nestlerode testified without contradiction that based on his decades of experience in enforcing the Pennsylvania Motor Vehicle Code, Christopher was driving at least twice the posted speed limit on a wet city street. Exceeding the speed limit could well be a violation of § 3361 or § 3362 of the Motor Vehicle Code if Nestlerode had measured Christopher's speed in accordance with § 3368, which he had not.

But the issue before us is not whether Nestlerode's stop of Christopher was valid under state law or whether Christopher could have been convicted for a violation of state law, as the Opinion of the majority would lead us to believe. Rather, the issue before us is whether, for purposes of the Fourth Amendment, it was reasonable under the totality of the circumstances for this highly experienced Deputy Sheriff to stop a driver he knew was going at least twice the speed limit. As to a Fourth Amendment analysis, the validity of a stop or an arrest under state law is "at most" a factor – a possible factor only – in assessing the broader question of probable cause. United States v. Laville, 480 F.3d 187, 192 (3d Cir. 2007). The majority treats it as virtually dispositive.

To be sure, the District Court erred in instructing the jury that the state speed timing requirements were "not relevant." But whatever marginal relevance those requirements may have had for Fourth Amendment purposes, it is clear, at least to me, that it is not "highly probable" that the faulty jury instruction influenced the jury's verdict. I respectfully dissent from § III(B) of the Opinion.

19